ACCEPTED
14-14-00855-cv
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
6/22/2015 12:55:53 PM
CHRISTOPHER PRINE
CLERK

## No. 14-14-00855-CV

IN THE COURT OF APPEALS FOR THE
FOURTEENTH SUPREME JUDICIAL DISTRICT
AT HOUSTON, TEXAS

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
6/22/2015 12:55:53 PM
CHRISTOPHER A. PRINE
Clerk

Adeel Zaidi, A. K. Chagla, Prestige Consulting, Inc.,
and Apex Katy Physicians – TMG, L.L.C., Appellants,

v.

Pankaj K. Shah and Apex Katy Physicians, LLC, Appellees.

On Appeal from the 61st District Court, Harris County, Texas
Trial Court Cause No. 2009-02578

## REPLY BRIEF OF APPELLANTS
## ● ORAL ARGUMENT REQUESTED ●

Douglas R. Little
State Bar No. 12416600
440 Louisiana Street, Suite 900
Houston, Texas  77002
713.275.2069

Robin L. Harrison
State Bar No. 09120700
Campbell, Harrison & Dagley L.L.P.
909 Fannin Street, 40th Floor
Houston, Texas 77010
(713) 752-2332
(713) 752-2330 Facsimile

June 22, 2015                    ATTORNEYS FOR APPELLANTS

TABLE OF CONTENTS

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

RECORD AND PARTY REFERENCES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . 2

REBUTTAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

1. The Court should reverse and remand this case for a new trial because the trial court's conclusion of law that Zaidi committed perjury is flawed in its over-breadth and not based upon legally sufficient evidence, and the court's consequent findings as to the relative credibility of the parties is against the great weight and preponderance of the evidence and constitutes an abuse of discretion. . . . . . . . . . . . . . . . . . . . . . . . 9

   A. The trial court erred in failing to specify the statement(s) it found to be perjury, and there was no fabrication of evidence. . . . . . 9

   B. Credibility determinations are the province of the trial court. 10

2. Appellants are prevented from adequately making their appeal to this Court because the trial court's gross award of damages is neither tied to specific causes of action nor broken down into specific items of damage awarded, and there is no evidence, or alternatively insufficient evidence, to support one or more of the causes of action or items of damage pleaded.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

3. The trial court's award of aggregate damages against Appellants based upon multiple alleged damages elements and its failure to attribute damages to or among the multiple causes of action alleged by Appellees is reversible error. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

   A. An award in any amount for recovery of "lost" accounts receivable is improper. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

B. An award based upon a contingent asserted liability is improper. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

C. An award of other damages to the Landlord is improper . . . 19

D. Conclusion as to these damages . . . . . . . . . . . . . . . . . . . . . . 21

4. No damages were proximately caused by any misrepresentation by any Appellant. (Appellants' Brief, 50–54.) . . . . . . . . . . . . . . . . . . . . . 23

5. Appellees ratified everything of which they complain. (Appellants' Brief, 54–55.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

6. Reimbursement for the sums paid to settle with the Landlord investors effects a double recovery. (Appellants' Brief, 56–57.) . . . . . . . . . . 24

7. The exemplary damages are excessive across the board. (Appellants' Brief, 57.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

8. No malicious conduct of Zaidi or Chagla was shown. (Appellants' Brief, 57–59.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

9. Appellees' fraud and related damages are not supported by any legally sufficient evidence. (Appellants' Brief, 59–67.) . . . . . . . . . . . . . . . 25

10. Appellants cannot be held liable for fraudulent inducement. (Appellants' Brief, 67.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

11 – 15. Appellants stand on their Brief on these issues . . . . . . . . . . . 27

CONCLUSION AND PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

# INDEX OF AUTHORITIES

Cases

*Bunton v. Bentley*, 153 S.W.3d 50 (Tex. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Crown Life Insurance Co. v. Casteel*, 22 S.W.3d 378 (Tex. 2000) . . . . . . . . 15, 23

*Eastern Tex. Elec. Co. v. Baker*, 254 S.W. 933 (Tex. 1923) . . . . . . . . . . . . . 15, 16

*Haase v. Glazner,* 62 S.W.3d 795 (Tex. 2001) . . . . . . . . . . . . . . . . . . . . . . . 27

*Harris County v. Smith*, 96 S.W.3d 230 (Tex. 2002) . . . . . . . . . . . . . . . 15, 16, 22

*Hendricks v. Thornton*, 973 S.W.2d 348 (Tex. App.–Beaumont
        1998, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Jauregui v. Jones,* 695 S.W.2d 258 (Tex. App.–San Antonio
        1985, writ ref'd n.r.e.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Johnston v. Guiterrez*, 77 S.W.3d 898 (Tex. App.—Houston
        [14th Dist.] 2002, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Lifshutz v. Lifshutz*, 61 S,W,3d 511, 515 (Tex. App.–San Antonio
        2001, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Spiritas v. Robinowitz*, 544 S.W.2d 710 (Tex. Civ. App.–Dallas
        1976, writ ref'd, n.r.e.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*State v. Eversole*, 889 S.W.2d 418 (Tex. App.–Houston [14th Dist.]
        1994, pet. disc. rev. den.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Tagle v. Galvan*, 155 S.W.3d 510 (Tex. App.—San Antonio 2004,
        no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Whitaker v. Rose,* 218 S.W.3d 216, 224 (Tex. App.—Houston
        [14th Dist.] 2007, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 22

Statutes and Rules

TEX. R. APP. P. 61.1(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# RECORD AND PARTY REFERENCES

1.  "CR" refers to the original Clerk's Record filed in one digital volume on December 5, 2014.

2.  "Supp CR" is the Perryman Deposition admitted into evidence. "Supp CR," "Supp CR 2," "Supp CR 3," and Supp CR 4" were filed collectively as one Supplemental Clerk's Record by the Harris County District Clerk on May 4, 2015. "RR" refers to the Reporter's Record filed in nine digital volumes on December 17, 2014. References to individual volumes will be designated "1RR," "2RR," etc. Volumes 1 – 5 contain the testimony adduced on March 17 – 20, 2014. Volumes 6 – 9 contain the parties' Exhibits.

3.  Individual parties will be identified by their last names. Appellant Prestige Consulting, Inc., which did business as Turn-Around Management Group, will be identified as "TMG." Appellant Apex Katy Physicians – TMG, LLC, the general partner of the Hospital, will be identified as "Apex TMG." The Hospital, Apex Long Term Acute Care – Katy, L.P., which having gone through a completed bankruptcy case was not in fact a party at the time of trial (see 9RR D. Exs. 62, 65), will be identified as the "Hospital." Appellee Apex Katy Physicians, LLC, will be identified as the "Landlord."

No. 14-14-00855-CV

IN THE COURT OF APPEALS
FOR THE FOURTEENTH JUDICIAL DISTRICT
AT HOUSTON, TEXAS

Adeel Zaidi, A. K. Chagla, Prestige Consulting, Inc.,
and Apex Katy Physicians – TMG, L.L.C., Appellants,

v.

Pankaj K. Shah and Apex Katy Physicians, LLC, Appellees.

On Appeal from the 61st District Court, Harris County, Texas
Trial Court Cause No. 2009-02578

**REPLY BRIEF OF APPELLANTS**

TO THE HONORABLE COURT OF APPEALS FOR
THE FOURTEENTH SUPREME JUDICIAL DISTRICT:

Appellants Zaidi, Chagla, TMG, and Apex TMG respond to the Brief of

Appellees in this Reply Brief. Appellants reiterate their challenge to all of the trial

court's findings and conclusions as unsupported and insupportable, either by legally

or factually sufficient evidence. Appellants also reiterate their challenge to the trial

court's award of damages as not having been supported by the court's findings of fact

and conclusions of law. Appellants seek a reversal of the Judgment and a remand for

a new trial.

## STATEMENT REGARDING ORAL ARGUMENT

The argument in Appellees' Brief demonstrates the truth of Appellants' contention that this case involved a real business deal involving numerous people who were trying to open and profitably operate a long-term acute care hospital in Katy, Texas – the Hospital. No one characterized the deal as fraudulent or malicious at the time, or even until 2010, when Shah and the Landlord invented – not "discovered" – the story told in Appellees' Brief.

Appellees will take any position required, even illogical ones, to preserve the $50,617,101.50 windfall Judgment they received from the trial court. Under these circumstances, Appellants maintain that the Court would benefit from oral argument, and Appellants believe that such argument will further the interests of justice.

## REBUTTAL TO APPELLEES' INTRODUCTION AND STATEMENT OF FACTS

Not surprisingly, Appellees' argument remains based upon the invented canard that the Hospital deal involving all these parties and many more was a fraud from the beginning, designed by Zaidi and his minions to "divert most of the money to himself." (Appellees' Brief, 1.) The story is artfully presented, but it is still artifice.

Appellees' statement later on page one of their brief belies the entire argument: "Now if the Tenant [the Hospital] had obtained a long-term acute care

license as quickly as planned, the business could have been a success . . ..” That simply does not sound like fraud. Frauds are designed to *appear* as though they are real, to seduce the innocent investors, but **never** to provide anyone other than the malefactors with a chance to succeed. The Hospital deal was supposed to succeed, it could have succeeded, and it almost did succeed. As Appellants have insisted all along, this case is about a Hospital that failed principally because of a governmental licensing delay.

Notwithstanding their admission that the Hospital deal could have succeeded, Appellees created and have fostered a contrary story worthy of a white-collar crime docudrama, and they indeed convinced the trial judge that it was more documentary than drama. But this Court cannot sustain their $50+ million award without indulging Appellees’ leaps of faith, by which they gloss over a lack of substantive evidence supporting their story and utterly disregard other substantive evidence that does not support it, on many of their grounds of liability, causation, and damages.

Appellants are certain that their Statement of Facts (Appellants’ Brief, 1–14) both fairly and accurately set forth what really happened between and among all the parties to the Hospital deal, and will only address certain material misstatements and omissions in Appellees’ Introduction (Appellees’ Brief, 1–3) and Statement of Facts (Appellees’ Brief, 4–18).

"Wrongful Leverage": Zaidi's representations had no effect on this. The only wrongful leverage was Shah's: He agreed when he signed the *Medistar* Binding Letter of Intent in September 2006 (D. Ex. 4) that he would pay $40,000 in cash per Unit to participate in the real estate for the Hospital. He did not. If he had, the MetroBank loan and the lien on the Hospital property would never have happened.

"Overcharging": The contention that $1.35 million in real estate commissions was paid is deliberately false, and there was *no* evidence, only insinuation, to support it. In this regard, as in others when necessary, Appellees simply ignore the undisputed evidence of Mr. Perryman (CR 1) – who was not a Zaidi confidant – that Appellants set out in their brief (48–49): There were no commissions paid to anyone on the sale of the Hospital property.

"Robbery": First, the overwhelming evidence of all who testified – except Shah at trial, as opposed to comments he had made at the time – was that the $700,000 transferred by check from the Landlord to Apex TMG, and then used by Apex TMG, the general partner of the Hospital, for Hospital purposes, was a loan. (Appellants' Brief, 13, 23–26, 56, 61.) In fact, the entry of the $700,000 as a debt on the Hospital's books and as an asset on the Landlord's books, about which Appellees complain (e.g., Appellees' Brief, 2), is the proper way to reflect an intercompany loan.

Likewise, the overwhelming evidence of all who testified, this time including Shah at trial, was that everyone knew that Medistar had units worth $2.8 million that it did not pay cash out of pocket for; Medistar, through Mr. Perryman, an independent witness, testified without contradiction that Medistar had provided services in lieu of cash for these units. (Appellants' Brief, 11, 29, 46.)

Appellees blithely skip all of the momentous events of December 22, 2006 (Appellees' Brief, 5), when at the meeting with Mr. Hourani, of Medistar, Shah took over the real estate investment for his own account (Appellants' Brief, 6–8). They fail to acknowledge that the reason for this meeting was Shah's failure to have paid for his 125 units. They ignore the fact that the only principals to the contract signed that night were Medistar and Shah. Zaidi signed only as a witness, as Mr. Perryman also verified. Shah was no passive investor by any stretch of the imagination.

In an attempt to support the grossly insupportable fraud and exemplary damages against Mr. Chagla, who did nothing but notarize one document, Appellees repeatedly call him Zaidi's "partner" (e.g., Appellees' Brief, 3, 5), an assertion wholly unsupported by evidence, and assert that he "drafted the lease with Medistar," again a deliberately false statement. Mr. Chagla, acting as the clerk he was, only faxed Medistar a sample lease for its use. (Appellants' Brief, 59.)

To be fair, Appellees get the facts right occasionally. They acknowledge (Appellees' Brief, 6) that "Shah also invested in the Landlord; Zaidi did not." As

Appellants noted (Appellants' Brief, 2), no person was more involved in every aspect of the Hospital deal than Shah. Zaidi, on the other hand, was involved only slightly as an owner in the Hospital deal and never stood to profit materially personally in any way other than as a part owner of TMG, which had the contract to manage the Hospital's business and would profit only from actual work.

Appellees insinuate that Zaidi agreed that had the closing not occurred, "TMG would have lost millions." (Appellees' Brief, 7, citing 2RR 213:16–23.) That testimony actually consists of Zaidi stating that "[the closing] couldn't have happened without Dr. Shah's and other physicians' funds and their guarantees." As Appellants have said (Appellants' Brief, 12, 54), it was the doctors, including Shah, who would have lost millions, not TMG, if the closing had not gone forward. That's why Shah made sure that it did.

Appellees overstate the confidence with which Mr. Schulte testified about Zaidi's representations before the closing. (Appellees' Brief, 8.) Mr. Schulte agreed on cross that Zaidi was present principally on behalf of the Hospital, not the Landlord (3RR 148:12–149:6), and that Zaidi told him his people "were on board" with a loan, but never said that they were on board "with getting a lien" (3RR 149:22–150:6). This distinction is prevalent in Zaidi's admittedly faulty memory of the events.

The $700,000 loan (Appellees' Brief, 9–10) has been addressed above and in Appellant's Brief (22–24). The accounting for that loan on the two company's

books was proper. The <u>only</u> evidence concerning the use of the funds came from Zaidi, who testified without contradiction that every penny went to Hospital operations, (5RR 1126:6–23), and not for TMG's own purposes.

Appellees' ad hominen attacks regarding the letter of credit and the waiver of the landlord's lien (Appellees' Brief, 9–11) are a rehash of their prior positions below and are as illogical and factually unsupported as they were there. (Appellants' Brief, 13, 21, 29–30, 39, 43–44, 46–47.) The amendment to the letter of credit did not void it, and there still is no evidence that any draw against it was ever attempted. Shah's knowledge of the original lien waiver and the execution of the replacement waiver have been explained and are not meaningfully contradicted. Appellees have made a very big deal of the "backdated" waiver that "concealed the date," because otherwise they have absolutely <u>no</u> evidence against Chagla. We can read the date, despite the errant notary stamp, and we suspect this Court can as well. (See Appellees' Brief, 11.) Appellants have already shown that Shah knew about the waiver from the beginning, and he did not deny this. Shah especially wanted the letter of credit, and he understood that the landlord lien waiver was a prerequisite (4RR 210:9–216:11). Can over $6.0 million in exemplary damages against Chagla properly be premised upon the notarization of a document that itself caused no damage?

With respect to allegedly missing investor funds (Appellees' Brief, 13–14), there is no evidence whatever that these funds are in fact missing or were accounted for incorrectly. Appellees' assertions here are pure surmise and conjecture. The only evidence that did exist concerned Medistar, and consisted of Shah's admission that he always – and not merely at trial – knew that Medistar did not pay cash and Mr. Perryman's uncontradicted testimony that Medistar provided services instead of cash for those units. There was <u>no</u> evidence from any source that the Appellants "gave" those units to Medistar.

As to the "maelstrom" of litigation against Shah that Appellees lay at Zaidi's feet, two facts are important to remember. *First*, nothing Zaidi told the investors in late 2009 could have caused any of the damages Appellees sued him for in this case. All the acts and omissions complained of had long since occurred. *Second*, it is beyond telling that, even with all this knowledge before them, not one of these investors sued or even blamed Zaidi for the harm; each one blamed Shah and only Shah, and he settled with them for his defaults as the real manager of the Landlord.

1. **The Court should reverse and remand this case for a new trial because the trial court's conclusion of law that Zaidi committed perjury is flawed in its over-breadth and not based upon legally sufficient evidence, and the court's consequent findings as to the relative credibility of the parties is against the great weight and preponderance of the evidence and constitutes an abuse of discretion.**

   A.     <u>The trial court erred in failing to specify the statement(s) it found to be perjury, and there was no fabrication of evidence.</u>

Appellees quote only part of the trial court's remarks at the conclusion of the evidence. (Appellees' Brief, 22.) Although he said what they quoted, he also said, before that, as Appellants quoted in their brief (17–18):

> [W]hat if the intent necessary for the cause of action that is pled has not been proven to my satisfaction but I have determined that there was intent in testimony presented to me that was intended to either deceive the Court or to directly and intentionally testify contrary to the facts as I have found them based upon the documents? Two separate things.

Not only did the trial court intimate that the intent to commit fraud in 2006 and 2007 had not been proved to his satisfaction, the court never identified one false statement made by Zaidi to deceive the court. Because of this failure, Appellants still are left to guess at what constitutes the supposed perjury and cannot meaningfully address this issue on appeal.

Perjury is the fabrication of evidence. That did not happen in this case. For better or worse, Zaidi continued to tell a story that may be hard for others to believe

but that he has said for many years that he believes. Appellants acknowledge that this is not a criminal proceeding, but the trial court's vague and nonspecific charges are the bedrock basis for a Judgment of more than $50,000,000. That is equally significant. "Facts constituting the offense of perjury must be averred directly and with certainty." *State v. Eversole*, 889 S.W.2d 418, 422 (Tex. App.–Houston [14th Dist.] 1994, pet. disc. rev. den.). The trial court's conclusion of law that Zaidi committed perjury is fatally over-broad and not supported by legally sufficient evidence.

### B. Credibility determinations are the province of the trial court.

Appellants do not dispute this and did not dispute it in their brief. Appellants contend there and here that the court's credibility determinations were flawed by his flawed conclusions regarding perjury, and the Judgment eloquently demonstrates this to be true.

Appellees incredibly state (Appellees' Brief, 30) that "appellants fail to specify any alleged inconsistent testimony [of Shah] with any bearing on any material fact." Appellees' apparently did not see section 1.C. of Appellants' Brief (19–30) which detailed numerous defects of all kinds in Shah's story. Several facts are particularly material:

(1) Shah believed that he had the right to go forward with the closing without any consents from anyone, and he did just that to protect his investment;

(2) Shah knew at all times that the Hospital's lender demanded and received a waiver of the Landlord's lien on receivables, and would not have issued the letter of credit securing the Hospital's rent that Shah made a requirement of the lease;

(3) Shah brought himself into the deal with Medistar and was the one who desired to control the real estate, which required the loan and the closing;

(4) contrary to his contrived litigation story, the Hospital investors, on many occasions, thanked Shah for making the $700,000 loan – which he acknowledged – to the Hospital at a time when it needed it so badly; and

(5) at no time prior to 2010 did Shah ever ask any questions of anyone about any of the things he now claims were so obviously fraudulent, including the existence of the so-called extra Landlord account that was to have been set up in 2007 with the $700,000 check.

These very material facts are all supported by evidence other than the testimony of Zaidi, and section 1.C sets out many more such material defects in Shah's false story. Appellants are more than willing to let this Court determine, in view of all the evidence about him, if this behavior really was Shah "being willing to give appellants the benefit of the doubt." (Appellees' Brief, 30.)

Appellees' several attempts to explain away the inconsistencies in Shah's story are unavailing. For example, they say (Appellees' Brief, 30) that Shah never called the $700,000 a loan. This is demonstrably false. In his January 2008 memo

(P. Ex. 40) he identified this money as "borrowed" from Metro and to be repaid.

Indeed, in perhaps a weak moment when he had strayed from his script on cross, Shah agreed that all the sums he listed as due in this January 2008 memo were *loans he had made to the Hospital* (4RR 282:13–283:7).

Appellees deny (Appellees' Brief, 32) that Shah structured the deal to favor "himself and his friends at the expense of fellow investors." They ignore as no doubt inconvenient the following admission:

> Q. So, we have two classes of people. We have Medistar and the three of you that are in this class [not paying cash]; and all the other poor schmucks that are in this class, they are paying cash, right?
>
> A. *Yes, sir.*

(4RR 166:7–167:7; Emphasis added.)

**2. Appellants are prevented from adequately making their appeal to this Court because the trial court's gross award of damages is neither tied to specific causes of action nor broken down into specific items of damage awarded, and there is no evidence, or alternatively insufficient evidence, to support one or more of the causes of action or items of damage pleaded.**

The trial court's findings of fact and conclusions of law (CR 1199, Appendix 2) contain no findings of any damages amounts, and the Judgment recites only damages awarded without making any findings as to how any actual damages were arrived at or for which claims. This happened even though the court, at the close of the evidence, asked for proposed findings and conclusions and said: "I do need the

findings of fact which support the numbers, if any, that you suggest should go in a judgment" (5RR 145:13–20). This also happened even though, after the court issued its findings and conclusions on October 3, 2014, Appellants on October 10 requested additional findings and conclusions that would have quantified the damages, by claim, to be awarded to Plaintiffs (CR 1207).

Appellees claim (Appellees' Brief, 36) that Appellants' argument that findings and conclusions should not contain a cumulative damages amount (Appellants' Brief, 33) is unsupported by authority. All of the cases cited in section 2 of Appellants' Brief support this conclusion.

Appellees do concede (Appellees' Brief, 35 and fn.15) that the trial court's Judgment awards to Shah $167,207.34 more than he asked for, and suggest a remittitur in this amount and in the exemplary damages based upon this award. This would be appropriate if any of the damages could pass muster, which they cannot. The awarding of this excess amount highlights the flaws in the trial court's Judgment, however. The trial court simply could not even correctly calculate, much less justify, the amounts it awarded in bulk on the claims Appellees asserted.

Appellees list all the claims and amounts attributable to them that *they* asserted. These amounts cannot be reconciled to the amounts stated in gross in the Judgment, however, and the trial court made no effort to do this. Appellees merely assert without support (Appellees' Brief, 35) that because their ad damnum amount

was larger that the amount actually awarded, all discrepancies are harmless error.

**3. The trial court's award of aggregate damages against Appellants based upon multiple alleged damages elements and its failure to attribute damages to or among the multiple causes of action alleged by Appellees is reversible error.**

There are two reasons why the trial court's failure to make specific damages findings attributable to Appellees' multiple claims prevents Appellants from being able properly to present their case to this Court and is therefore error. *First*, the trial court's failure to make any findings concerning each Appellant's liability for, and the specific amounts of, the multiple elements of damages alleged by Appellees prevents Appellants from being able to isolate the errors in the aggregate amounts of damages awarded as to each by the court. Appellants remind the Court that they specifically requested such findings by claim. *Second*, the trial court's failure to attribute damages separately to the multiple causes of action alleged by Appellees prevents Appellants *and this Court* from being able to determine whether the Judgment is based upon valid or invalid liability theories. These errors "prevent the [Appellants] from properly presenting the case to the appellate courts," and require reversal. TEX. R. APP. P. 61.1(b). Appellees have failed to address these errors in their brief.

The Landlord alleged more than $18.1 million in damages, and Shah alleged more than $9.2 million in damages against the "Defendants," collectively. (Appellees' Brief, 34–35.) Plaintiffs offered several different calculations of their

damages to the trial court (Appellees' Brief, 35) on the multiple elements of damages alleged by them: twelve separate damage elements claimed by the Landlord, and seven separate elements claimed by Shah.

The trial court awarded actual damages to the Landlord of $4,071,584 and to Shah of $9,336,920 (the latter excessive in any event, as Appellees admit). The court made no findings of fact concerning the amounts of damages awarded by it, which elements or amounts claimed by Appellees it accepted or rejected, or the elements or amounts attributable to any particular cause of action or Appellant.

In *Harris County v. Smith*, 96 S.W.3d 230, 232–36 (Tex. 2002), the Texas Supreme Court held that a broad form jury charge that commingled valid and invalid damages elements constituted harmful error and required a new trial. In so holding, the Court applied the reasoning of its decision in *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378 (Tex. 2000). In *Casteel*, the Court held that a single broad form liability question – the equivalent to the findings and conclusions here – that commingles valid and invalid liability grounds is harmful and requires a new trial because an appellate court cannot determine whether the jury based its verdict on an invalid theory of liability. *Id.* at 388. The Court in *Harris County* also relied on its holding in *Eastern Tex. Elec. Co. v. Baker*, 254 S.W. 933, 934–35 (Tex. 1923), in which it held that a defendant is entitled "to have the damages assessed against it by the jury under proper instructions submitting only the elements of damages as raised by the

-15-

pleadings, and supported by the evidence." *Harris County v. Smith*, 96 S.W.3d at 234, quoting *Eastern Tex. Elec. Co. v. Baker*, 254 S.W. at 934.

The rule in *Harris County* has been held to be applicable to damages awards in non-jury trials and even default judgments. *Whitaker v. Rose*, 218 S.W.3d 216, 224 n. 3 (Tex. App.—Houston [14th Dist.] 2007, no pet.)*; Tagle v. Galvan*, 155 S.W.3d 510 (Tex. App.—San Antonio 2004, no pet.).

Appellees have wholly failed to address the trial court's error in failing to make findings of fact with respect to the multiple elements of damages alleged by them and in awarding gross amounts of damages in the Judgment. Appellees simply assert, "[b]ut a *Harris/Casteel* problem arises only if a bulk damages award is predicated on an invalid liability theory." This argument was specifically rejected by the Supreme Court in *Harris County*: "We hold that *Casteel's* reasoning applies equally to broad-form damage questions, and under its rational we conclude that the charge error in this case was harmful." Thus, where a gross or aggregate amount of damages based on valid and invalid damages elements is awarded, "this court must reverse and remand as to the entire award, even though one of the other elements might be sufficient to support the award." *Whitaker v. Rose*, 218 S.W.3d at 224, citing *Johnston v. Guiterrez*, 77 S.W.3d 898, 903-04 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (explaining that its holding was based upon the same principles applied in *Casteel*).

A. An award in any amount for recovery of "lost" accounts receivable is improper.

Appellants have shown in their brief (30–49) that a substantial portion of the damages claimed by Plaintiffs are not supported by any evidence or sufficient evidence. The Landlord's claim of $11,218,465 for the loss of alleged accounts receivable of the Hospital in 2009 has no valid evidentiary support. This huge claim was based on the testimony of Shah's nephew, Parag Parikh, who assumed there was not a landlord's lien waiver already in place before 2009, contrary to the evidence (3RR 181:6-182:9). Parikh then totaled amounts of revenue allegedly received by the Hospital between May 2008 and a later, unknown, date and treated that amount as accounts receivable. However, the factual evidence is undisputed that the records relied on by Parikh did not contain accounts receivable data for the relevant time period (Shebay, 5RR 16:11-18; 15:2-16), and that, to the extent the Hospital ever did have actual accounts receivable, the Landlord was not precluded from foreclosing on them by any alleged waiver (3RR 183:5-8).

Accounts receivable does not include "collected" accounts receivable (see Appellees' Brief, 36–37), which are more properly referred to as *revenue*. Moreover, the lien on Hospital accounts receivable was specifically granted to secure the payment of rents under the lease. (Lease, P. Ex. 30i.) There is no evidence that past-due rents ever approached $11.0 million. The only calculation of past-due rents

placed in evidence was Shah's 2008 memo (P. Ex. 40) showing past-due rent as of January 2008 of $1,482,642.50. Even that calculation was flawed in Appellees' favor because it did not allow the four-months of free rent provided for in the lease. These numbers cannot factually support an award of $11.0 million in accounts receivable.

Appellants' discussion of Bank of America's failure to collect any accounts (Appellants' Brief, 41) was not intended to speak to any issue except that such accounts did not exist, and that certainly does have bearing on Appellees' damages. And Parikh's unsupported testimony (Appellees' Brief, 37) that the Landlord unsuccessfully tried to foreclose is no evidence because he testified as an expert, however unqualified, and not as a fact witness. He had no such *factual* knowledge.

B.     An award based upon a contingent asserted liability is improper.

The award to Shah by the trial court similarly may include the $5,445,291 contingent liability claimed by Shah related to his guaranty of the MetroBank loan, which Shah previously has insisted and alleged he does not owe. (4RR 308:15-24.) This amount has not been paid by Shah, and there is no evidence that it will ever be paid, or that it may not be discharged or compromised for a different amount in the future. "A contingency which cannot be determined with reasonable certainty cannot be made the basis for recovery of a definite amount of damages." *Spiritas v. Robinowitz*, 544 S.W.2d 710, 720 (Tex. Civ. App.—Dallas 1976, writ ref'd n.r.e.). Based on the trial record, it cannot be known whether Shah has incurred any future

pecuniary damage arising out of the guaranty. *Id.* at 719.

Appellants showed that this amount was not recoverable. (Appellants' Brief, 44–45.) Appellees argue (Appellees' Brief, 38) nevertheless that Shah's denial of liability is irrelevant and that Appellants did not attempt to prove estoppel. These positions are frankly ridiculous. If Shah denies owing the money, and claims he is owed instead, it cannot be concluded that damage to him in the amount he has denied has been "determined with reasonable certainty." It is the contingency that must be determined, not the amount of the claim. It is understandable that Shah would like to have his cake – the Judgment for this amount – and eat it too – denial of the claim in the arbitration, but this does not support a recovery of this contingency.

C.      An award of other damages to the Landlord is improper.

As Appellants have shown (Appellants' Brief, 45–49), Appellees' damages also may have included invalid claims for $2.8 million based on ownership units allegedly "given" to Medistar, although there is no evidence of any involvement of any of the Appellants in this regard; $638,000 that Landlord allegedly was not able to draw against a letter of credit, although there is no evidence Landlord ever attempted to make a draw; and $1,350,000 for alleged "commissions" paid to Appellants, although there is no evidence of any commission payment but there is competent evidence that no such payment was made.

-19-

The Units: (Appellants' Brief, 45–46.) Appellees argue (Appellees' Brief, 39–40) that Appellants are liable because there was no evidence that Landlord received money for the Medistar units. Since this amount was claimed as damage, it is elementary that it was Appellees' burden to prove that the damage existed, and they did not. We have already shown that Shah knew all along about Medistar's units; his knowledge was not at all limited to the time of trial, as his testimony shows.

The Letter of Credit: (Appellants' Brief, 46–48.) In response to Appellants' correct observation that there was no evidence that Zaidi had the letter of credit or refused to turn it over, Appellees argue (Appellees' Brief, 41–42) that Zaidi obviously possessed it when he signed it. This is not obvious as it is equally likely that he signed it at the bank. Appellees did not prove that he had it. There is no evidence that any Appellant caused damage to the Landlord with respect to the letter of credit.

The Bogus Commissions Claim: (Appellants' Brief, 48–50.) In the face of clear evidence from Zaidi – who cannot be deemed to have lied about every single word he said, regardless of the trial court's conclusions – Ms. Saqer, and Mr. Perryman, that Medistar did not pay any commissions to anyone on the sale of the Hospital real estate, and no evidence to the contrary, Appellees with fierce determination continue to assert (Appellees' Brief, 42–43) that illegal commissions were paid. They of course do not attempt to show how any such commissions, even had they existed, could have actually caused harm to anyone, since the structure of

the agreement Shah made with Medistar the evening of December 22, 2006, was not affected in any way.  Appellees disregard all the evidence, even of Mr. Perryman, who was not connected to any party in any way, saying simply that the trial court could have disregarded it.   The trial court cannot properly disregard the uncontroverted testimony of a disinterested witness just because he doesn't like it. "*When there is conflicting evidence*, the appellate court *usually* regards the finding of the trier of fact as conclusive. *See Jauregui v. Jones,* 695 S.W.2d 258, 263 (Tex. App.–San Antonio 1985, writ ref'd n.r.e.)." *Lifshutz v. Lifshutz*, 61 S,W,3d 511, 515 (Tex. App.–San Antonio 2001, pet. denied) (emphasis added).   There was no conflicting evidence here on this point, only insinuation, so the usual rule of appellate deference should not apply here.

    D.  Conclusion as to these damages.

The trial court's failure to make any findings of fact relating to any damages claimed by Appellees in the findings and conclusions that should have supported its Judgment award of gross amounts against Appellants prevents them from being able to isolate the elements of damages claimed by Appellees on which the Judgment is based and properly present their appeal to this Court.  Because there is insufficient evidence to support more than one alleged damages element, neither Appellants nor this Court can determine whether the trial court awarded damages based on those elements.  *All that can be known is that in order to arrive at the amount awarded,*

*some part of these invalid damages had to have been included.* Therefore, this Court should reverse the damages awards against Appellants and remand Appellees' claims for a new trial. *Harris County v. Smith*, 96 S.W.3d at 236; *Whitaker v. Rose*, 218 S.W.3d at 224.[1]

Because the trial court also did not allocate damages awarded by it to any of the multiple causes of action alleged by Appellees, Appellants were again harmed under the rule in *Casteel*, and a new trial should be granted. The Supreme Court ruled in *Casteel* that when a single liability question commingles valid and invalid liability grounds, and the Appellants' objection is timely and specific, the error is harmful and a new trial is required because the appellate court cannot determine whether the verdict is based on an invalid theory. Here, because the trial court assessed gross damage amounts in favor of the Landlord and Shah, Appellants cannot know what amounts the trial court may have awarded in connection with the multiple causes of action alleged by Appellees. Appellants have shown that liability against them cannot be based on one or more of Appellees' fraud, misrepresentation, breach of fiduciary duty, conspiracy, and alter ego claims as a matter of law. Appellants cannot, however, determine whether any or all of the damages awarded in the Judgment are attributable to these invalid liability claims. As one single example,

---

[1] For the same reasons, the trial court's award of punitive damages must also be reversed. *Bunton v. Bentley*, 153 S.W.3d 50, 54 (Tex. 2004).

there is not even a scintilla of evidence that Chagla ever owed a fiduciary duty to Appellees, much less that he breached it. Yet the trial court found him liable for such a breach, and Appellants can only guess at the amount of damages attributed to that claim. Appellants are prevented from presenting their appeal because they cannot isolate and quantify the trial court's error. The error is harmful, and this Court should reverse the Judgment and order a new trial. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d at 388.

4. **No damages were proximately caused by any misrepresentation by any Appellant.** (Appellants' Brief, 50–54.)

Appellees in this section (Appellees' Brief, 43–44) simply restate their earlier positions, which Appellants believe they have already addressed. Shah believed he had the authority to enter into the mortgage without any consents, and Appellants have shown that he had every reason to do so and none not to. These arguments are not "post-trial speculation" (Appellees' Brief, 44); they are the drawing of very obvious inferences from undisputed facts.

5. **Appellees ratified everything of which they complain**. (Appellants' Brief, 54–55.)

Appellees assert (Appellees' Brief, 44–45) that Appellants neither cite nor quote any memo by Shah to support the ratification. This is false. Appellants call Appellees' and the Court's attention to Plaintiffs' Exhibit 40, which described the $700,000 as "Borrowed from Metro on 8/21/07," and which set out, by Shah's

acknowledgment, all of the amounts Shah admitted were loans the Landlord had made to the Hospital (4RR 282:13–283:7). The Hospital's response (D. Ex. 40) and Shah's conduct thereafter effectuate the ratification.

**6. Reimbursement for the sums paid to settle with the Landlord investors effects a double recovery.** (Appellants' Brief, 56–57.)

Appellees here assert (Appellees' Brief, 45–46) that as a "technical matter," there is no evidence that Shah owns any of the Landlord now. Defendant's Exhibit 67 (p. 36 of 42), lists Shah's ownership as "Indus Associates, Attn: Pankaj K. Shah, MD, Manager." This is certainly a technicality, since it was presumed all through trial, and never disputed, that Indus Associates was Shah's wholly owned investment vehicle: Indus is Shah, and Appellees do not deny this. This fact is made all the more plain in that all of Shah's units in the Landlord, which he does claim, were issued in the Indus Associates name. (P. Ex. 3.) Although there were many investors at the beginning, after the settlement, at bankruptcy, there were only three, and Shah was the big one, with "Approximately 76.7%." (D. Ex. 67, p. 36 of 42.)

**7. The exemplary damages are excessive across the board.** (Appellants' Brief, 57.)

Appellees in this section (Appellees' Brief, 46) simply restate their earlier positions, which Appellants believe they have already addressed. The exemplary damages must fall along with the defective award of compensatory damages.

-24-

**8. No malicious conduct of Zaidi or Chagla was shown.** (Appellants' Brief, 57–59.)

Appellees in this section (Appellees' Brief, 46–47) simply restate their earlier positions, which Appellants believe they have already addressed. Appellants add only that the case is far more compelling as to Chagla, who was <u>not</u> Zaidi's "long-term partner." (Appellees' Brief, 47.) Chagla was a retired clerical employee who had a vestigial ownership interest in TMG but did not direct its activities in any way that any evidence showed. The exemplary damage award against him, when he did nothing but notarize one document, and could not appear to defend himself due to life-threatening illness, shocks the conscience, particularly when one considers that he was so unimportant to Appellees until trial that they never even noticed his deposition.

**9. Appellees' fraud and related damages are not supported by any legally sufficient evidence.** (Appellants' Brief, 59–67.)

Appellants proved that these claims must fall because they are neither legally nor factually supported. Appellants made their argument and cited appropriate cases.

In response, Appellees argue in six pages essentially for the creation of a concept of "collective fiduciary duty" that would allow the court simply to decide that someone did something wrong and then hold everyone connected to that malefactor liable for breach of fiduciary duty. Appellees in their Brief cite three cases, total, and not one stands for the "collective fiduciary duty" concept. It does not exist. The

court in *Hendricks v. Thornton*, 973 S.W.2d 348 (Tex. App.–Beaumont 1998, pet. denied), did recognize a *separate* cause of action for aiding and abetting a breach of fiduciary duty, but that cause of action was <u>not</u> pleaded here against any Appellant other than Zaidi, and the Judgment did not assess liability against any Appellant on this ground.

Appellants believe that they have addressed every relationship that existed between and among the parties, and that they have shown that, under the facts of this case, neither Zaidi nor Chagla breached any applicable fiduciary duty or committed fraud against either Shah or the Landlord. Appellants stand on that argument.

**10. Appellants cannot be held liable for fraudulent inducement.** (Appellants' Brief, 67.)

Appellees dispute (Appellees' Brief, 52–53) Appellants' contention that they cannot be held liable for fraudulent inducement because they were not parties to contracts with Appellees. Their rationale is that Appellants did not cite a case supporting this proposition and that such a holding would be "contrary to basic fraud principles." (Appellees' Brief. 53.)

Appellants call Appellees' and the Court's attention to this language in their brief:

> Fraudulent inducement can only exist as a cause of action with respect to a contract between a Plaintiff and a Defendant. "Fraudulent inducement 'is a particular species of fraud' that requires proof of the common law elements of fraud and ***a***

-26-

*contract . . . between the parties*." *Haase v. Glazner,* 62 S.W.3d 795, 798–99 (Tex. 2001, emphasis added).

Appellants stand on this proposition of law.

**11 – 15.   Appellants stand on their Brief on these issues.**

With the exception of Appellee's point 14 (Appellees' Brief, 55-56), Appellants believe they have proved that their positions are correct on these issues. (Appellants' Brief, 68–74.)

Appellees' point 14 asserts that the trial court had the right as a matter of discretion to "impose consequences on Chagla's failure to appear . . .." (Appellees' Brief, 55.)  This is wrong under our facts.

Chagla did not refuse to appear, and he did not choose not to appear.  He could not appear, and the trial court refused to order him to appear based upon the uncontroverted evidence from his doctor that travel from Pakistan to Houston was medically impossible.  Appellees never attempted in all the years this case was pending, before he returned home, to take his deposition.  He did nothing wrong.  To hold that the draconian penalties imposed by the trial court under these circumstances were permissible is unconscionable, as is Appellees' continuing demand for these penalties.

## CONCLUSION AND PRAYER

For all these reasons, and the reasons set out in Appellants' Brief, the Judgment of the trial court should be reversed, and this case should be remanded for a new trial on all issues of liability and damages.

June 22, 2015                    Respectfully submitted,

                                 LAW OFFICES OF DOUGLAS R. LITTLE

                                 By */s/ Douglas R. Little*
                                     Douglas R. Little
                                     State Bar No. 12416600
                                     The Lyric Centre, Suite 900
                                     440 Louisiana Street
                                     Houston, Texas  77002
                                     713.275.2069
                                     doug@douglasrlittle.com


                                 CAMPBELL, HARRISON & DAGLEY
                                 L.L.P.

                                 By /s/ Robin L. Harrison
                                     Robin L. Harrison
                                     State Bar No. 09120700
                                     909 Fannin Street, 40th Floor
                                     Houston, Texas 77010
                                     (713) 752-2332
                                     (713) 752-2330 Facsimile

                                 COUNSEL FOR APPELLANTS ADEEL
                                 ZAIDI, A. K. CHAGLA, PRESTIGE
                                 CONSULTING, INC., AND APEX KATY
                                 PHYSICIANS – TMG, LLC

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief was produced on a computer using WordPerfect 12 software and contains 6,675 words, as determined by the software's word-count function, excluding those sections of the brief listed in Texas Rule of Appellate Procedure 9.4(i)(1) as being excludable. The total applicable word count for both briefs filed by Appellants in this case is 25,391.

/s/ Douglas R. Little
Douglas R. Little

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading has been served upon all counsel listed below via eFileTexas.gov or electronic mail on the 22nd day of June, 2015:

Jeremy Gaston
Andrew K. Meade
Hawash Meade, et al.
2118 Smith Street
Houston, Texas 77002

/s/ Douglas R. Little
Douglas R. Little